# EXHIBIT F

# Estate of Glenn Grossarth

# VCF Documentation


September 11th
Victim Compensation Fund

June 14, 2019

DENISE GROSSARTH
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear DENISE GROSSARTH:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of GLENN GROSSARTH.  Your claim number is VCF0109717.  Your Eligibility Form was determined to be substantially complete on June 13, 2019.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

### The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- IDIOPATHIC INTERSTITIAL PNEUMONIA

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

### What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need

_____
P.O. Box 34500, Washington, D.C. 20043
VCF0109717EL0614191C



**September 11th Victim Compensation Fund**

to use the VCF Private Physician process. The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources." The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials. If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information. The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: DENISE GROSSARTH



April 29, 2020

DENISE GROSSARTH
66 CLOVER AVENUE
FLORAL PARK NY  11001

Dear DENISE GROSSARTH:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for compensation.  Your claim number is VCF0109717.  Your claim form was determined to be substantially complete on April 20, 2020.  This means your claim was deemed "filed" for purposes of section 405(b)(3) of the Statute on that date.

The VCF has reviewed the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities.  When determining the amount of your loss, the VCF calculates the amount of your economic and non-economic loss and then is required to subtract the amount of any payment you have received, or are entitled to receive, from any source that meets the definition of collateral offsets under the Statute and regulations.  Because the amount of your collateral offset payments exceeds the total amount of your economic and non-economic loss, your award is $0.00.

This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

When a victim passes away after receiving an award for a personal injury claim, the VCF must recalculate all components of loss to determine whether additional compensation can be paid on a wrongful death claim.  Therefore the combined personal injury and wrongful death loss was calculated, and the amount previously paid on the personal injury claim, as well as any applicable offsets, was subtracted from the combined total. In so doing, your award resulted in a negative number; therefore, no amount is awarded at this time.

The VCF awarded $11,169.25 in burial expenses, based solely on the documentation submitted from Thomas F. Dalton Funeral Homes.  The expenses claimed in the documents relating to the Locust Valley Cemetery Association were not reimbursed because they did not clearly establish whether and to what extent these expenses were incurred because of the death of Mr. Grossarth.  The VCF also increased the personal injury loss amount to $250,000 in light of the Special Master's determination that special circumstances existed in this claim that warranted departure from the $90,000 non-economic loss maximum award established by law for non-cancer claims.



**What Happens Next**

The VCF will deem this award to be final unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below.

- **Appealing the Award**:  You may request a hearing before the Special Master or her designee if you believe the amount of your loss was erroneously calculated or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss.

    To appeal the award, you must complete two steps by the required deadlines:

    1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal*.

    2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**.  It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award.  Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the "Policies and Procedures" document.

    Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

                                                 Sincerely,

                                                 Rupa Bhattacharyya
                                                 Special Master
                                                 September 11th Victim Compensation Fund

cc: WENDELL TONG



# Award Detail

Claim Number: VCF0109717
Decedent Name: GLENN GROSSARTH

| **PERSONAL INJURY CLAIM (Losses up to Date of Death)** | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $392,569.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $392,569.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | ($88,508.00) |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | ($51,043.80) |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | ($139,551.80) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $253,017.20 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $253,017.20 |
| | |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $503,017.20 |



September 11th Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---:|
| **Loss of Earnings including Benefits and Pension** | $1,666,064.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | $0.00 |
| SSA Survivor Benefits | ($1,165,108.90) |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($1,165,108.90) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $500,955.10 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $247,020.00 |
| Burial Costs | $11,169.25 |
| **Total Other Economic Losses** | $258,189.25 |
| | |
| **Total Economic Loss** | $759,144.35 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $300,000.00 |
| **Total Non-Economic Loss** | $550,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($1,244,000.00) |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ($1,244,255.00) |
| | |
| **Subtotal Award for Deceased Claim** | $64,889.35 |



September 11th
Victim Compensation Fund

| **Subtotal of Personal Injury and Deceased Claims** | $567,906.55 |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($1,746,702.40) |
| **TOTAL AWARD** | $0.00 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $124,562.00 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 07/10/2013 |

| **Eligible Conditions Considered in Award** |
|---|
| Idiopathic Interstitial Pneumonia |

# Family Member Affidavits

# Denise Grossarth

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

In Re:

TERRORIST ATTACKS ON                                  03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

                                                    **AFFIDAVIT OF**
------------------------------------------------------------ X  **DENISE GROSSARTH**
JILL ACCARDI, et al.,

                                       Plaintiffs,      21-CV-06247 (GBD)(SN)

                V.

ISLAMIC REPUBLIC OF IRAN,

                                       Defendant.
------------------------------------------------------------ X

STATE OF NEW YORK    )
                                : SS
COUNTY OF NASSAU    )

DENISE GROSSARTH, being duly sworn, deposes and says:

1. I am a plaintiff in the within action, am over 18 years of age, and reside at 66 Clover Avenue, Floral Park, New York 11001.

2. I am currently 52 years old, having been born on December 24, 1970.

3. I am the wife of Decedent, Glenn Grossarth, upon whose death my claims are based. I submit this Affidavit in support of the present motion for a default money judgment for the claim made on behalf of my husband's estate and for my solatium claim. On July 14, 2017, I was issued Letters Testamentary as Executrix of my husband's estate by the Nassau County Surrogate's Court.

4. My husband passed away from pulmonary fibrosis on December 3, 2016, at the age of 47. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. Glenn Grossarth and I were in love for 15 years and married for 13 years and 2 months. We were lovers, best friends, explorers, and skiing partners. We traveled across the United States and had plans to travel worldwide together upon our retirement. He completed a Bachelor of Science in Architecture and practiced as a licensed architect for 20 years. Both of us being active skiers since early childhood, we skied the mountains of Utah, California, Colorado, and Vermont. We both also grew up locally, he on Staten Island and me on Long Island. We spent many summers swimming at the local beaches throughout childhood. Jones Beach in particular holds a special place in my heart. I have many fond childhood memories of that beach. They include memories of long walks at night along the boardwalk with Glenn. During courtship, one windy Spring afternoon as we were flying kites, Glenn dropped to one knee and proposed to me. Since we were both raised to enjoy the mountains and the beaches, we continued these traditions with our two sons. We skied and frequented Long Island beaches each summer with the boys. When Glenn fell ill, it became too challenging to enjoy such activities.

6. At the time of the terrorist attacks on September 11, 2001, he was employed by Larsen Shein Ginsberg Magnusson Architects as a Senior Project Manager and Senior Associate of the firm. His office was located at 170 Varick Street on the 3rd floor. He also commuted to and from his office via Staten Island Ferry every day. That is how he became exposed to 9/11 toxins.

7. Glenn started to experience shortness of breath on April 11, 2013. He went to his primary care physician, who immediately ordered tests to rule out heart and lung problems. The next day, the doctor told Glenn that his lungs were the cause of shortness of breath, not his heart. He informed my husband that his lung x-ray showed severe damage to both lungs. He scheduled appointments for Glenn to follow up with a pulmonologist. By May 2013, after reviewing test results, the doctors gave him a diagnosis of Interstitial Lung Disease. In July 2013, he was

referred to the lung transplant program at New York Presbyterian Columbia University Hospital. He was accepted to the transplant program in January of 2014. He had a bout of pneumonia in Nov. 2014 which he recovered from, but his health began to decline more rapidly from that point onwards. Even though his health was steadily declining, he was considered 'too healthy' to qualify for a transplant until April 2015. From April to June of 2015, he declined to the point that he could not walk without having breathless attacks that knocked him down to the ground. His medical team insisted that light exercise would prolong his life, but the best that he could manage was 2 minutes on the treadmill a day at the lowest speed.

8. Glenn was approved for a lung transplant procedure in July of 2015. Initially, he recovered extremely well and was out of the hospital in 2 weeks. However, by October his lungs were showing signs of rejection. The doctors said this was common and they strongly advised a Nissen fundoplication procedure. The procedure occurred in Jan. of 2016. Post Nissen fundoplication surgery, he was struggling with nausea and retching. All measures to prevent lung infection and rejection failed. He was not able to sustain his weight, losing 40 lbs. in 5 months. In April of 2016, he was extremely weak, and we learned that he had a fungal infection. He survived another 6 months at home with zero quality of life. Nausea and vomiting never subsided and occurred after every meal. In September of 2016, a feeding tube was implanted for nourishment. On November 9, 2016, he was transferred to the ICU. Even though the maximum amount of oxygen was being administered, he was still struggling. By midday November 12, 2016, he was put on a ventilator where he remained in the ICU until his heart stopped on December 3, 2016.

9. My husband was a loving, caring gentleman. He was my first love and my other half. He was an easy-going man content with his career and family. Other couples noted how

well we got along and how we did everything together. He was also a doting father, who always taught his sons, read stories to them every night at bedtime, and always gave big bear hugs. It has been almost seven years since his passing and my heart remains broken. I hold back tears as our sons reach milestones without their dad being here to celebrate with them. We loved together, lived together, made decisions together, and dreamed together. Since Glenn was such an amazing and supportive parent and spouse, it has made it even more difficult for me to parent alone. I am just surviving without him. He was no ordinary dad. He was the cheer on every birthday and holiday. He was a strong, loving man who was also a very caring, patient, and involved dad. I continue to try to fill his role, but we will live with our loss forever. There will be a void in each one of our hearts, until it is our turn to join him in eternity. That is the burden we carry with us every minute of every day.

10.     People say time helps and that I will move forward and live again. Maybe. My eldest son has aged and is building a life for himself, attending college. It is not quite the same story with my youngest son. My youngest son was born medically, physically, and developmentally disabled. He is 16 years old now, but developmentally he is 5-6 years old or younger. His development has been labeled as 'scattered'. He often asks, "Where is Dad?" I remind him that Daddy is in heaven. Since Glenn's passing, I remain at home and available for my son as flare ups of his illness occur. His health, although relatively stable compared to his early years of life, continues to remain unpredictable. I never know when a flare up will occur, and his speech disorder prevents him from being able to express his discomfort. This makes employment challenging, so I remain unemployed and live off the savings and social security survivor benefits I receive. Taking care of a special needs child with multiple disabilities is a two-parent job, but I am left to manage this alone for the remainder of my living days. Both my sons are painfully

reminded that they have no dad at every milestone they reach. They watch their friends and peers celebrate with their dads while the seat of my sons' father remains empty. On my eldest son's high school graduation, he had to find a private moment to shed a tear as all the other boys were receiving hugs, high fives, and bumps from their dads. No words can describe the detriment of the loss of my husband and their father. You could only know if you walked in our shoes.

*DENISE GROSSARTH*

Sworn before me this 11 day of October 2023

Notary public

MARY CAPOBIANCO
Notary Public, State of New York
No. 01CA6327242
Qualified in Nassau County
Commission Expires July 26, 2027