# EXHIBIT G

# Estate of James Lanza

# VCF Documentation



**September 11th Victim Compensation Fund**

June 18, 2019

MARIAN PENNACHIO
68 SUNSET COURT
MAHWAH NJ  07430

Dear MARIAN PENNACHIO:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of JAMES LANZA.  Your claim number is VCF0108177.  Your Eligibility Form was determined to be substantially complete on June 17, 2019.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

### The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- ASTHMA, UNSPECIFIED, UNSPECIFIED STATUS
- BASAL CELL CARCINOMA OF SKIN, UNSPECIFIED
- CHRONIC RHINITIS
- ESOPHAGEAL REFLUX AND RELATED PHYSICAL CONDITIONS:  BARRETTS ESOPHAGUS
- MALIGNANT NEOPLASM OF BRAIN UNSPECIFIED
- MALIGNANT NEOPLASM OF PROSTATE
- OTHER CHRONIC BRONCHITIS
- UNSPECIFIED SINUSITIS

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury.  Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

_____
P.O. Box 34500, Washington, D.C. 20043
VCF0108177EL0618191B



September 11th
Victim Compensation Fund

**What Happens Next**

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim. Please see the VCF website for details on how to amend your claim. The VCF will review the new information and determine if it provides the basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim. If you choose to amend your claim, you will need to use the VCF Private Physician process. The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources." The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials. If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information. The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



December 2, 2020

MARIAN PENNACHIO
68 SUNSET COURT
MAHWAH NJ  07430

      **Re: CLAIM NUMBER: VCF0108177**

Dear MARIAN PENNACHIO:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for compensation.  Your claim form was determined to be substantially complete on October 30, 2020.  This means your claim was deemed "filed" for purposes of section 405(b)(3) of the Statute on that date.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as **$188,837.17**.  This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

The VCF recomputed the prior 2017 VCF award of personal injury economic loss to account for your brother's death. The award also includes non-economic losses attributed to the personal injury prior to your brother's death and those on account of his wrongful death, but does not include economic loss on the wrongful death portion of the award, as your brother had already passed the age at the which the VCF assumes worklife ends at the time of his death.  The prior 2017 payment was offset from the total award.
VCF did not award compensation for the loss of your brother's FDNY pension benefits, which terminated at his death, because that is not a loss compensable by the VCF. Replacement services compensation was not awarded because loss of services to non-dependents are made only where there are special needs, documented by evidence.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

**What Happens Next**

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form



within **30 days from the date of this letter** as explained below.  If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period.  Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss.  **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

    To appeal the award, you must complete two steps by the required deadlines:

    1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

    2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**.  It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award.  Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the Policies and Procedures available under "Forms and Resources."

    Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award.  If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.



Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0108177**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

                          Sincerely,

                          Rupa Bhattacharyya
                          Special Master
                          September 11th Victim Compensation Fund

cc: WENDELL TONG



# Award Detail

Claim Number: VCF0108177
Decedent Name: JAMES LANZA

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $239,609.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $239,609.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | ($232,950.00) |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | ($232,950.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $6,659.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $438.18 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $438.18 |
| | |
| **Total Economic Loss** | $7,097.18 |
| | |
| **Total Non-Economic Loss** | $340,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $347,097.18 |

P.O. Box 34500, Washington, D.C. 20043
VCF0108177AL1202201B



September 11th Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | |
| SSA Survivor Benefits | |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $0.00 |
| Burial Costs | $5,483.75 |
| **Total Other Economic Losses** | $5,483.75 |
| | |
| **Total Economic Loss** | $5,483.75 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $0.00 |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | $0.00 |
| Life Insurance | ($2,525.00) |
| Other Offsets | ($11,501.58) |
| **Total Additional Offsets** | ($14,026.58) |
| | |
| **Subtotal Award for Deceased Claim** | $241,457.17 |



September 11th
Victim Compensation Fund

| | |
|---|---:|
| **Subtotal of Personal Injury and Deceased Claims** | $588,554.35 |
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($399,717.18) |
| **TOTAL AWARD** | $188,837.17 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $129,757.05 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 100.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | 01/30/2015 |

| **Eligible Conditions Considered in Award** |
|---|
| Asthma, Unspecified, Unspecified Status |
| Basal Cell Carcinoma of Skin, Unspecified |
| Chronic Rhinitis |
| Esophageal Reflux and Related Physical Conditions:  Barretts Esophagus |
| Malignant Neoplasm of Brain Unspecified |
| Malignant Neoplasm of Prostate |
| Other Chronic Bronchitis |
| Unspecified Sinusitis |

# Family Member Affidavits

# Marian Pennachio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                                     03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------- X         **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                              **MARIAN PENNACHIO**


             Plaintiffs,         21-CV-06247 (GBD)(SN)

     V.

ISLAMIC REPUBLIC OF IRAN,

         Defendant.
-----------------------------------------------------------------X

STATE OF NEW JERSEY )
          : SS
COUNTY OF BERGEN  )

  MARIAN PENNACHIO, being duly sworn, deposes and says:

  1. I am a plaintiff in the within action, am over 18 years of age, and reside at 68 Sunset Court, Mahwah, NJ 07430.

  2. I am currently 74 years old, having been born on June 4, 1949.

  3. I am the sister of Decedent, James Lanza, upon whose death my claims are based. I submit this Affidavit in support of the present motion for a default money judgment for the claim on behalf of my brother's estate and for my solatium claim. On July 11, 2017, I was issued Letters of Administration as Administrator of my brother's estate by the Queens County Surrogate's Court.

  4. My brother passed away from aggressive glioblastoma on April 6, 2017, at the age of 71. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.  James J. Lanza was my brother, my mentor, my best friend and my hero. We were always very close, but bonded even more so when our sister, died suddenly of a brain aneurysm when she was only fifteen. Jimmy was seventeen and I was thirteen. We learned how valuable life was from a very young age. In addition to being my only living sibling, he was an uncle to my three adult children and great uncle to my four grandchildren. Jimmy was also my daughter's godfather. We grew up in Manhattan and Queens and come from a very large family. Our mother's family consisted of twelve children and our father's had eight children. Jimmy was the first grandchild born on our mother's side and happened to arrive on our grandmother's birthday, making him a special gift from God. Everyone in the family looked up to him and Jimmy made sure we were all taken care of. He was loved by everybody. He was a Vietnam Veteran and did two tours of duty for the U.S. Navy. Upon his discharge, he went to college and became a Steamfitter doing a two-year apprenticeship during construction of the World Trade Center. He dedicated his life to service and decided to become a New York City Firefighter and EMT. Jimmy never married and spent every holiday with us, his family, when he was not working at the firehouse. He made time to visit with our parents, my children, and their children routinely. We vacationed together and loved being together, having fun at the pool and the lake and attending plays in the city. We shared the responsibility of supporting and caring for our parents as they aged and later passed away. Then he helped me deal with my husband dying of cancer over a five-year period. Jimmy was always there for me and supported us in all aspects. He is loved and missed beyond measure and comprehension.

6.  Jimmy was not scheduled for work at the firehouse on September 11th. Once he heard what was going on at the World Trade Center, he reported for duty. He was joined by twelve other firefighters, and they were transported to the World Trade Center. His group of firefighters was held back in line just as the second tower came down. Shortly thereafter, Jimmy and his crew were released to rescue anyone they could find from stairwell A and B. They did find sixteen survivors in stairwell B and a few others in the vicinity. Jimmy did call our parents around 6:00

p.m. to let them know he was alive. We all cried in anticipation and relief once we heard from him. Our family and friends tried to find any information as to his whereabouts throughout the day. Jimmy continued working the Pile, daily on search and rescue until it became recovery to the very end of the mission. He was fully exposed to all the World Trade Center toxins for the entire duration.

7.      A few years later, Jimmy started coughing a lot, had lung issues, GERD, then he had prostate cancer and melanoma directly related to his exposure to the World Trade Center toxins. Jimmy was diagnosed with Glioblastoma Brain Cancer which swept through all of our family's lives like a dark cloud on November 20, 2016. He went through painful treatments including a six-hour brain surgery in an attempt to remove the tumor on November 21. Jimmy suffered from severe side effects including not knowing who he was nor where he was. He had slurred speech, couldn't feed himself, couldn't read and couldn't see out of his left eye because his brain was not functioning correctly. He suffered through several infections in his body during his hospitalization from November 20 until December 29, 2016. At which point he was transferred directly to a sub-acute rehab center and then into hospice in early March 2017 where he died on April 6, 2017. Jimmy was a vibrant, youthful, energetic, globetrotting individual. He was committed entirely to service on a local, national and international level. His loss of life has been absolutely devastating to our family. Jimmy's role in our lives could never be replaced.

8.      Over the years my family and I watched Jimmy's health deteriorate and encouraged him to see the various doctors for treatment, which he did. Once the brain cancer was diagnosed, I commuted from New Jersey six days a week to console Jimmy and reassure him that he was safe and being taken care of. Some days I would feed him breakfast and I ate lunch with him every day. Being Jimmy's Medical Proxy, I made sure he was well taken care

of and had what he needed. Every morning when I arrived, he was crying because he didn't know who he was nor where he was. He did know he was going to die. I would take him to mass on Sundays in the chapel and we prayed often. The nuns and priests were there often. He had many visitors and was well loved by all. It was a very difficult time to get through, but I made sure I was there for him. In February of 2017, I was hit by a car while crossing the street near my home in New Jersey. I was injured very badly and couldn't visit Jimmy for about three weeks or so. My daughter and grandson visited him in my absence. Jimmy actually thought I died. Once I was strong enough, my daughter brought me to see him, and it was quite an emotional day for all of us. Due to my injuries, my visits became limited, but continued right to the end of Jimmy's life on April 6, 2017. Unfortunately, I have a traumatic brain injury and can no longer drive. Therefore, I can't get to the cemetery to visit Jimmy very often. It has been very difficult for me to come to terms with Jimmy's passing, as he was my rock and I miss him terribly.

MARIAN PENNACHIO

Sworn before me this
12 day of July, 2023

Notary public

SARBJIT K GORAYA
Notary Public
State of New Jersey
My Commission Expires Aug. 16, 2023
I.D.# 2458136