# EXHIBIT L

Estate of William Mundy

# VCF Documentation


September 11th
Victim Compensation Fund

August 23, 2017

JILL ACCARDI, ET AL.
2725 FORTESQUE AVENUE
OCEANSIDE NY  11572

Dear JILL ACCARDI, ET AL.:

The September 11th Victim Compensation Fund ("VCF") previously sent you an Eligibility determination letter on July 03, 2017 for the claim you submitted on behalf of WILLIAM MUNDY.  Your claim number is VCF0075591.  The letter included a list of condition(s) deemed eligible for compensation.  During subsequent review of your claim, it was discovered that one or more of your eligible conditions was missing from that list.  This letter provides the complete list of conditions for which you are eligible for compensation and supersedes and replaces the previous letter.

**The Decision on your Claim**

The VCF has determined that you meet the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, you have been found eligible for the injuries listed below.  *This list includes all injuries for which you have been found eligible.*

- CHRONIC LARYNGITIS AND LARYNGOTRACHEITIS
- CHRONIC RHINITIS
- ESOPHAGEAL REFLUX
- INTERSTITIAL LUNG DISEASE

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury.  Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

**What Happens Next**

You submitted the Compensation portion of your claim form.  The VCF will contact you if additional information is needed in order to calculate your award.  **If you believe your new condition(s) changes your compensation claim**, you should amend your claim.  For example, if your new condition is the reason you are not able to work, you should provide that



September 11th
Victim Compensation Fund

information to the VCF by amending your claim.  Please see the www.vcf.gov website for additional details on how to amend your claim.

**If your newly eligible condition(s) does not change your compensation claim**, you do not need to take any action at this time.

**If you believe you have eligible injuries that are not being treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating your award, you should amend your claim.  If you choose to amend your claim, you must first seek certification for the condition(s) from the WTC Health Program.  Seeking certification for your condition provides the VCF with the necessary evidence that the condition is eligible for compensation.  Please note, however, that because additional certifications do not necessarily impact the amount of your award, we recommend that you wait to receive your award letter to determine whether to seek certification for any additional condition(s).

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund



September 11th
Victim Compensation Fund

August 19, 2020

JILL ACCARDI, ET AL.
2725 FORTESQUE AVENUE
OCEANSIDE NY  11572

**Re: CLAIM NUMBER: VCF0075591**

Dear JILL ACCARDI, ET AL.:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on July 13, 2018 notifying you of the amount of your award.

You then amended your claim to request additional losses.  The VCF has considered your amended claim and reviewed the new information you provided.  This letter sets forth the revised award and supersedes and replaces all previous letters.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as **$572,155.54**.  This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

The VCF has revised your award to include replacement services beginning on the date of your father's death; replacement services prior to your father's death are not included in the award because the medical records submitted do not show that your father's eligible conditions prevented him from performing the claimed services before he died.

Additional personal injury non-economic loss is not included in the award because you have already received the maximum award that we are allowed to give for interstitial lung disease under the law. We can award more than this maximum in limited circumstances, where the effects of the condition are severe. We reviewed the medical records that you submitted in support of your amendment, but were unable to conclude that your claim meets the threshold for awarding more than the maximum. If you believe you meet this threshold, you should request "special circumstances" consideration on appeal.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.



September 11th
Victim Compensation Fund

**What Happens Next**

You have already received a payment of $557,814.54.  You are now entitled to an additional payment of **$14,341.00**.  This amount is equal to the difference between your revised total award and the amount that has already been paid on your claim.

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below.  If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period.  Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss.  **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

  To appeal the award, you must complete two steps by the required deadlines:

  1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

  2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**.  It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award.  Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the Policies and Procedures available under "Forms and Resources."

  Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award.  If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If



September 11th
Victim Compensation Fund

you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0075591**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund


cc: WENDELL TONG



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:     VCF0075591
Decedent Name:    WILLIAM MUNDY

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $90,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $90,000.00 |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $250,000.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | $0.00 |
| SSA Survivor Benefits | $0.00 |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $250,000.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $14,341.00 |
| Burial Costs | $17,498.00 |
| **Total Other Economic Losses** | $31,839.00 |
| | |
| **Total Economic Loss** | $281,839.00 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $0.00 |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | $0.00 |
| Life Insurance | ($49,683.46) |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ($49,683.46) |
| | |
| **Subtotal Award for Deceased Claim** | $482,155.54 |



September 11th
Victim Compensation Fund

| | |
|---|---|
| **Subtotal of Personal Injury and Deceased Claims** | $572,155.54 |
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| **TOTAL AWARD** | $572,155.54 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $0.00 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | 0.00% |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| **Eligible Conditions Considered in Award** |
|---|
| Chronic Laryngitis and Laryngotracheitis |
| Chronic Rhinitis |
| Esophageal Reflux |
| Interstitial Lung Disease |

DOH-1961 (8/2011)

**NEW YORK STATE DEPARTMENT OF HEALTH**

# CERTIFICATE OF DEATH

RECORDED DISTRICT: 2881
REGISTER NUMBER: 1771
STATE FILE NUMBER:

| | |
|---|---|
| 1. NAME: FIRST William | MIDDLE T. | LAST Mundy |
| 2. SEX: MALE ☒ 1 FEMALE ☐ 2 | 3A. DATE OF DEATH: MONTH 10 DAY 19 YEAR 2013 | 3B. HOUR: 7:40 Am |

4A. PLACE OF DEATH: (Check one) HOSPITAL DOA ☐ ER ☐ HOSPITAL OUTPATIENT ☐ HOSPITAL INPATIENT ☐ NURSING HOME ☐ PRIVATE RESIDENCE ☐ HOSPICE FACILITY ☒ OTHER (Specify):

4B. IF FACILITY, DATE ADMITTED: MONTH 10 DAY 16 YEAR 2013

4C. NAME OF FACILITY: (if not facility, give street address) Hospice Care Network

4D. LOCATION: (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☒ North Hempstead

4E. COUNTY OF DEATH: NASSAU

4F. MEDICAL RECORD NO. 40678728

4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION? (if yes, specify institution name, city or town, county and state) NO ☐ YES ☒ North Shore University Hospital Manhasset Nassau New York

5. DATE OF BIRTH: MONTH 09 DAY 06 YEAR 1926

6A. AGE IN YEARS: 87 yrs.

6B. IF UNDER 1 DAY ENTER: months___ days___

6C. IF UNDER 1 DAY ENTER: hours___ minutes___

7A. CITY AND STATE OF BIRTH: (If not USA, Country and Region/Province) NY, NY

7B. IF AGE UNDER 1 YEAR, NAME OF HOSPITAL OR BIRTH:

8. SERVED IN U.S. ARMED FORCES? (Specify years) NO ☐ YES ☒ '43-1946

9. DECEDENT OF HISPANIC ORIGIN? Check the boxes that best describe whether the decedent is Spanish/Hispanic/Latino
A ☒ No, not Spanish/Hispanic/Latino
C ☐ Yes, Puerto Rican
E ☐ Yes, Other Spanish/Hispanic/Latino (Specify)
B ☐ Yes, Mexican, Mexican American, Chicano
D ☐ Yes, Cuban

10. DECEDENT'S RACE: Check one or more boxes to indicate what the decedent considered himself or herself to be:
A ☒ White/Caucasian ☐ Black or African American ☐ Asian Indian ☐ Chinese
E ☐ Filipino ☐ Japanese ☐ Korean ☐ Vietnamese
I ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
☐ American Indian or Alaska Native (specify)
☐ Other Asian (specify)
☐ Other Pacific Islander (specify)
☐ Other (specify)

11. DECEDENT'S EDUCATION: Check the box that best describes the highest degree or level of school completed at the time of death.
1 ☐ ≤ 8th grade
2 ☐ 9th-12th grade; no diploma
3 ☒ High school graduate or GED
4 ☐ Some college credit, but no degree
5 ☐ Associate's degree
6 ☐ Bachelor's degree
7 ☐ Master's degree
8 ☐ Doctorate/Professional degree

12. SOCIAL SECURITY NUMBER: 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

13. MARITAL STATUS: NEVER MARRIED ☐ MARRIED ☐ WIDOWED ☒ DIVORCED ☐ SEPARATED ☐

14. SURVIVING SPOUSE: Enter birth name of spouse if married or separated.

15A. USUAL OCCUPATION: (Do not enter retired) Firefighter

15B. KIND OF BUSINESS OR INDUSTRY: Firefighting

15C. NAME AND LOCALITY OF COMPANY OR FIRM: FDNY Brooklyn, NY

16A. RESIDENCE: (State and country if not USA) NY

16B. County or Region/Province if not USA: Queens

16C. LOCALITY: (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☐ New York

16F. IF CITY OR VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS? YES ☐ NO ☐ IF NO, SPECIFY TOWN:

16D. STREET AND NUMBER OF RESIDENCE: 1204 Crossbay Blvd., Broad Channel

16E. ZIP CODE: 11693

17. BIRTH NAME OF FATHER / PARENT: FIRST Harry MI LAST Mundy

18. BIRTH NAME OF MOTHER / PARENT: FIRST Margaret MI LAST Leinker

19A. NAME OF INFORMANT: Jill Accardi

19B. MAILING ADDRESS: (include zip code) 2725 Fortesque Avenue Oceanside, NY 11572

20A. ☐ BURIAL ☐ CREMATION ☐ REMOVAL ☐ HOLD ☐ DONATION 6 ☒ ENTOMBMENT MONTH 10 DAY 22 YEAR 2013

20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION: St. John's Cemetery

20C. LOCATION: (City or town and state) Middle Village, NY

21A. NAME AND ADDRESS OF FUNERAL HOME: Hillebrand Funeral Homes 63-17 Woodhaven Blvd. Rego Park, NY 11374

21B. REGISTRATION NUMBER: 00789

22A. NAME OF FUNERAL DIRECTOR: Kenneth Lysak Jr

22B. SIGNATURE OF FUNERAL DIRECTOR:

22C. REGISTRATION NUMBER: 12165

23A. SIGNATURE OF REGISTRAR:

23B. DATE FILED: MONTH 10 DAY 21 YEAR 2013

24A. BURIAL OR REMOVAL PERMIT ISSUED BY: G Battista (sub)

24B. DATE ISSUED: MONTH 10 DAY 30 YEAR 2013

**ITEMS 25 THRU 33 COMPLETED BY CERTIFYING PHYSICIAN -- OR -- CORONER/CORONER'S PHYSICIAN OR MEDICAL EXAMINER**

25A. CERTIFICATION: To the best of my knowledge, death occurred at the time, date and place and due to the causes stated.
Certifier's Name: Mary Makayur
License No.: 266636
Signature:
MONTH 16 DAY 19 YEAR 2013

25B. Certifier's Title: ☐ Attending Physician ☒ Physician acting on behalf of Attending Physician ☐ Coroner ☐ Medical Examiner / Deputy Medical Examiner
Address: 300 Community Drive Manhasset New York 11:30

25B. If coroner is not a physician, enter Coroner's Physician's name & title:

25C. If certifier is not attending physician, enter Attending Physician's name & title: Frankenthaler Michael
License No.: 204906
Address: 300 Community Drive Manhasset New York 11:30

26A. Attending physician attended deceased: FROM MONTH 10 DAY 16 YEAR 2013 TO MONTH 10 DAY 19 YEAR 2013

26B. Deceased last seen alive by attending physician: MONTH 10 DAY 19 YEAR 2013

26C. PRONOUNCED DEAD ON MONTH 10 DAY 19 YEAR 2013 TIME 7:40 A.m.

27. MANNER OF DEATH: NATURAL CAUSE ☒ 1 ACCIDENT ☐ 2 HOMICIDE ☐ 3 SUICIDE ☐ 4 UNDETERMINED CIRCUMSTANCES ☐ 5 PENDING INVESTIGATION ☐ 6

28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER? NO ☒ YES ☐

29A. AUTOPSY? NO ☒ YES ☐ REFUSED ☐

29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH? YES ☐ NO ☐

30. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B), AND (C).)
APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART I. IMMEDIATE CAUSE:
(A) Respiratory Failure — days
DUE TO OR AS A CONSEQUENCE OF:
(B) Intestitial lung disease — months

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A):

DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ NO 1 ☐ YES 2 ☐ PROBABLY 3 ☒ UNKNOWN

31A. INJURY: MONTH DAY YEAR  HOUR:

31B. INJURY LOCALITY: (City or town and county and state)

31C. DESCRIBE HOW INJURY OCCURRED:

31D. PLACE OF INJURY:

31E. INJURY AT WORK? NO ☐ YES ☐

31F. IF TRANSPORTATION INJURY, SPECIFY: ☐ DRIVER/OPERATOR ☐ PASSENGER ☐ PEDESTRIAN ☐ OTHER (specify)

32. WAS DECEDENT HOSPITALIZED IN LAST 2 MONTHS? NO ☐ YES ☒

33A. IF FEMALE: 1 ☐ Not pregnant within last year 2 ☐ Pregnant at time of death 3 ☐ Not pregnant, but pregnant within 42 days of death 4 ☐ Not pregnant, but pregnant 43 days to 1 year before death 5 ☐ Unknown if pregnant within past year

33B. DATE OF DELIVERY: MONTH DAY YEAR

*(left margin, vertical text)* For use by physician or institution: NAME OF DECEDENT: Mundy William  DATE OF DEATH: 10-19-2013  TIME OF DEATH: 7:40 A.m.

# Family Member Affidavits

Jill Accardi

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                           03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------- X          **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                                     **JILL ACCARDI**

                                    Plaintiffs,                 21-CV-06247 (GBD)(SN)
                    V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-------------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF NASSAU           )

        JILL ACCARDI, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
2725 Fortesque Avenue, Oceanside, New York 11572.

        2.      I am currently 62 years old, having been born on August 29, 1960.

        3.      I am the daughter of Decedent, William Mundy, upon whose death my claims
are based. I submit this Affidavit in support of the present motion for a default money
judgment for the claim made on behalf of my father's estate and for my solatium claim.
On January 24, 2014, I was issued Letters Testamentary as co-Administrator of my
father's estate by the Queens County Surrogate's Court.

        4.      My father passed away from Respiratory Failure and Interstitial Lung Disease on
October 19, 2013, at the age of 87. It was medically determined that this illness was causally
connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks
at the World Trade Center.

5.       My dad, William T. Mundy, was an amazing father who later in life also became both my friend and confidant. As goes the circle of life, the love and care which he gave to me throughout my formative years, I was able to give back to him as he aged and became ill. My dad was married to my mom, Patricia, for over 55 years. The bond between my dad and I, and my husband and children grew even stronger as he became part of our daily lives and eventually living with us. I could not have asked for a more powerful role model for myself. He was a man of love, family, honor, and patriotism. Though early on he and my mom may have struggled to raise myself and four siblings, we were never left without family fun, road trips of summers in upstate NY, firehouse visits and stories, swimming in Jamaica Bay and Rockaway beach, and the importance of reading and a good education. He taught me to work hard so you can play hard, give back to others when you can, family is always first, and always be able to take care of yourself.

6.       Prior to my dad becoming a firefighter, he joined the U.S. Navy during WWII proudly serving in the Naval Air Transport Service in the Pacific. In September of 1951, he became a proud FDNY firefighter in Engine 210 and then transferred to the elite Rescue 2 Company in Brooklyn. I remember when my dad would take us for visits to the firehouse on Carlton and Myrtle Avenue.

7.       I have so many special memories of times with my dad. He was a fitness buff back before it was a thing, telling us he was in better shape than Jack LaLanne. He ran five miles a day for as long as I can remember. I began running with him as a pre-teen and would often go to FDNY running races during my teen and college years. We began going to the gym together when I graduated from college. To this day keeping fit is super important to me, a legacy which I have passed on to my three children. One of the most very special memories I have is when my first child, Liana, was born. She was his first grandchild, and she was also born on my mom's birthday. I don't know if I had ever seen him so happy. He would sit and hold her for hours telling us it completed his life to be a part of her arriving. My children and my dad were very, very close,

which I always felt so blessed to experience. My dad's love of family, commitment to service to others, strong work ethic, and dutiful patriotism continues to impact my life today. I have spent my adult life raising three amazing and successful children who care for each other and their families and have a rewarding career in the medical field. I am who I am because of him. He was my dad, my idol, and my friend.

8.      On the days following the events of September 11, 2001, though retired for many years from the FDNY, my dad returned to help 'his brothers' after the attacks on the World Trade Center. He held to his belief of "Once a fireman, always a fireman!" He served in the capacity of retired volunteer responder for the City of NY Fire Department. He volunteered at the pile at Ground Zero for the first time on September 15, 2001, and numerous times thereafter for an average of nine hours per day. He spent these hours and days delivering equipment and supplies from the FDNY shops to fellow workers at Ground Zero, accounted for tools at the end of the day, delivered food and water to the Ground Zero workers, off-loaded materials from trucks and vans in the vicinity of the American Exchange Building and an area called 10-10. He also shared with me that he spent time at the pile consoling fellow retired firefighters whom he knew from years on the job, and some he did not know, who were searching for their lost sons and/or family members at the site.

9.      In 2002, I recall my dad coughing a lot, so his cardiologist sent him for a CT scan. The CT scan results led to his diagnosis of Interstitial Lung Disease. He continued with persistent coughing and verbal complaints of feeling that his throat was continually irritated, that his voice was becoming raspy, and was feeling as though he had chronic laryngitis. His laryngeal and persistent coughing symptoms continued during all of this. His symptoms persisted with a worsening of raspy voice, choking at night while sleeping, and onset of sleep apnea.

10.     My dad continued with multiple medical appointments over the following year due to persistent symptoms of breathing difficulties, and chronic coughing and laryngitis symptoms. Treatments continued with medications, diagnostic testing, nasal sprays and rinses, and antibiotics. He would have frequent bouts of coughing fits and awake periodically in the night with shortness of breath. His last years were filled with medical appointments, respiratory

medications, and GERD medications. In 2013, my dad returned to the hospital with a diagnosis of pneumonia. At this point both he and I well understood how serious a diagnosis of pneumonia is in someone with interstitial lung disease. He required high levels of oxygen (5 liters), experienced hypoxia, severe shortness of breath and choking episodes. He inevitability succumbed to his interstitial lung disease and respiratory failure on October 19, 2013.

11.     In just a few short years post 9/11, my dad's onset of new symptoms and diagnoses seemed unending. Although I would never change a day, caring for him had progressively become a full-time job. My one sister, Robin, was very helpful while my other siblings lived out of state and/or were busy with their own lives. As his last caretaker, I am now aware of much time I had lost with my own children and spouse, though none of us harbor any regrets.

12.     In recalling all this, it makes me realize how terrible this all affected my dad's quality of life just a short time after his exposure at Ground Zero. I think maybe the most difficult part for me was the fact that I could not take my dad home at the end to pass as he made me promise him. Due to his need for a rebreather and his need for high levels of oxygen (5 L), this option for me to care for him at home was not available. It broke my heart to not only know that I was going to lose him but that I was not able to fulfill his final wish, a wish he and I wanted, and he deserved. One of the saddest events for me was that he passed shortly before his granddaughter Liana had gotten married. He would have loved to have been there. It was so hard to watch my strong, loving, hardworking, beautiful dad choke, gasp for air, and be unable to breathe. He really did not deserve to die such a difficult death. I and my family were certainly blessed to call him Dad and Grandpa and I treasure the last years I shared with him and cared for him.

JILL ACCARDI

Sworn before me this

3rd day of August, 2023

Notary public

MAUREEN E. MANDATO
Notary Public, State of New York
No. 4955616
Qualified in Nassau County
Commission Expires Sept. 5, 2025

William T. Mundy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                    03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

---------------------------------------------------------------- X        **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                             **WILLIAM T. MUNDY**


                                        Plaintiffs,                21-CV-06247 (GBD)(SN)


                        V.

ISLAMIC REPUBLIC OF IRAN,

                                        Defendant.
---------------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF QUEENS           )


        WILLIAM T. MUNDY, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
226 Beach 137th Street, Belle Harbor, New York 11694.

        2.      I am currently 65 years old, having been born on May 6, 1958.

        3.      I am the son of Decedent, William Mundy, upon whose death my claim is
based, and submit this Affidavit in connection with the present motion for a default
judgment and in support of my solatium claim.

        4.      My father passed away from Respiratory Failure and Interstitial Lung Disease on
October 19, 2013 at the age of 87. It was medically determined that this illness was causally
connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks
at the World Trade Center.

5.     My father was a wonderful man, loving husband, and inspiration to most people he knew. He was an avid outdoorsman and athlete. It was the way he raised all his children as well. He was a track runner and jogger and whenever he would ask me to go on a run with him, he would share stories and life updates on the family. My father was a socialite and was part of a hunting and fishing club where he would spend a week at a time. His family meant the world to him, and he was a deeply religious man and prayed. He was sure to never miss a Sunday mass. My father retired at 50 years old in 1976, which gave him the opportunity to spend more time with his family. A memory I hold dear to me is when my dad would take our family and friends to the beach. There would be 20 or more of us and my father would be sure we would have as much fun as possible.

6.     On 9/11, my father was a retired firefighter of 25 years. Even in his retirement at the age of 75, my father felt compelled to assist and make a determined effort to save lives and to give to a devasting cause. My father volunteered for many hours on the pile assisting with rescue and recovery efforts.

7.     After 9/11, my father suffered from breathing complications. His lung disease effected his every activity. My father was terribly ill and could no longer partake in his hunting or fishing club activities because he needed an oxygen tank. There were no more random "runs" for us to catch up how we once did. My father's time was now preoccupied by his focus to breathe and as that became more difficult every day for him, he became less and less active. Witnessing my father's quality of life diminish was heart breaking. It was even more difficult knowing that there was nothing I could do to change what we knew would be inevitable.

8.     My father sacrificed his life to help others during 9/11 and his death truly did hurt my family and me. Due to a terrorist attack, my father developed this illness that could've possibly been avoided by my father not volunteering, but it was not in his character to refuse extending a

helping hand where he could. As a result, my father was taken away from us prematurely. My father's legacy remains nine years since his passing as people still remind us of how great of a person he was. We grieve and mourn his loss everyday and as time progresses the pain from losing my father isn't easier.

WILLIAM T. MUNDY

Sworn before me this

10th day of August 2023

Notary public

**Rayvon Andrew Grandison**
**Notary** Public, State of New York
Reg. No. 01GR6440631
Qualified in Queens County
Commission Expires 09/12/2026

Robin Mundy-Sutton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                        03-MDL-1570  (GBD)(SN)
SEPTEMBER 11, 2001

----------------------------------------------------------------- X      **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                             **ROBIN MUNDY-SUTTON**


                                        Plaintiffs,            21-CV-06247 (GBD)(SN)


                   V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.
----------------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF SUFFOLK          )


        ROBIN MUNDY-SUTTON, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
12 Long Lane, Hampton Bays, New York 11946.

        2.      I am currently 61 years old, having been born on March 22, 1962.

        3.      I am the daughter of Decedent, William Mundy, upon whose death my claims
are based. I submit this Affidavit in support of the present motion for a default money
judgment for the claim made on behalf of my father's estate and for my solatium claim.
On January 24, 2014, I was issued Letters Testamentary as co-Administrator of my
father's estate by the Queens County Surrogate's Court.

        4.      My father passed away from Respiratory Failure and Interstitial Lung Disease on
October 19, 2013, at the age of 87. It was medically determined that this illness was causally
connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks
at the World Trade Center.

5.     My father was a proud retired FDNY firefighter coming from a long lineage of other firefighters in our family. He was an amazing dad and grandfather who deeply cared for his family. My dad taught me how to love, laugh, and respect others. My dad and I spoke daily, and I visited him on most days. In my younger years, I remember my dad fixing cars and motorcycles and staying close by to observe every move he made. My dad eventually taught me how to fix cars and ride motorcycles as well. During the summer months, he would take us to ride ponies and taught me how to fish. On one summer fishing trip when I was 5 years old, I recall my dad specifically not allowing me to use the fishing hook because of my age. However, instead of me feeling left out, my dad tied a string to a wooden stick and attached a safety pin at the end. On that day, I caught a two-foot carp fish on my makeshift fishing hook. My dad took me home and we took pictures of me with my recent catch which made him and me proud. Years later, these moments are embedded in my memory.

6.     On 9/11, my dad was adamant about helping with the rescue and recovery efforts. Although, we were all worried he would injure himself, he still went especially since one of his fellow firefighter friends had lost both of his children during the 9/11 attacks. My dad spent months at the site where the World Trade Center once stood. For me, this time was especially chaotic as my husband and my uncles were also firefighters and spent several hours supporting the rescue and recovery efforts as well, all of whom I did not see for weeks.

7.     Shortly after 9/11, my father developed a dry cough. The cough resulted in him needing to see doctors on a regular basis. I remember during a conversation with my father, him saying he "sees more doctors than people". I realized in that moment that my dad's quality of life had deteriorated drastically from our family trips and quality time with his loved ones to frequent

visits to the doctor. Gradually my father's breathing had become more restricted, and then he needed an oxygen tank which had become frustrating for a once active man. One night, he was nearly unable to breathe. He was rushed to the emergency room at Northwell Hospital in Manhasset, New York. There, his oxygen was increased but barely improved his breathing. After doctors examined him, they informed my father that there was nothing that could be done to improve his condition. My dad was moved to hospice care within two days of us arriving at the hospital. In my father's last days, I recall him reminding my siblings and me that he would be going to dance with my mother who had preceded him in death. I remember these words because even during my dad's last moments he remained religious and positively reassured us that he was okay as we would be as well.

8.      There isn't a day that goes by where I do not think of my dad or miss him dearly. It is difficult for me to even discuss moments we shared without becoming engulfed in emotions. My father's passing caused a profound loss of guidance, love, and laughter. My father's witty personality is irreplaceable. I miss the sound of his giggles or his practical jokes and our daily conversations. The emptiness from losing my dad and my husband losing his bonding time with my dad is heartbreaking. I wish he was still here, but I try to take comfort in knowing he is still living life in Heaven—a value he instilled in me.

ROBIN MUNDY-SUTTON

Sworn before me this
___ day of ___, 2023

Notary public

CHRISTOPHER MONROE
Notary Public - State of New York
NO. 01MO6201290
Qualified in Suffolk County
My Commission Expires ___

Lois Rothenberg

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

--------------------------------------------------------------- X     **AFFIDAVIT OF**
JILL ACCARDI, et al.,                                               **LOIS ROTHENBERG**


                              Plaintiffs,              21-CV-06247 (GBD)(SN)


               V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.
--------------------------------------------------------------- X

STATE OF NORTH
CAROLINA              )
                      : SS
COUNTY OF WAKE        )


        LOIS ROTHENBERG, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
208 Hunters Crossing, Cary, North Carolina 27518.

        2.      I am currently 64 years old, having been born on May 2, 1959.

        3.      I am the daughter of Decedent, William Mundy, upon whose death my claim is
based, and submit this Affidavit in connection with the present motion for a default judgment and
in support of my solatium claim.

        4.      My father passed away from Respiratory Failure and Interstitial Lung Disease on
October 19, 2013 at the age of 87. It was medically determined that this illness was causally
connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks
at the World Trade Center.

5.    William Mundy was the father of five children and a grandfather of eleven. I am his middle child. My dad was a retired FDNY firefighter. He was very hard working, fun, and funny man who loved his wife and family above all others. As a child, he taught us to swim, fish, water ski, snow ski, ride motorcycles, and horses. One of my most cherished moments with my dad is that on every Christmas Eve, he would sit all five of us on his lap and read "'Twas the Night Before Christmas." I recall one year he took me and my siblings snow skiing every Wednesday. After that year, I thought we were rich as any child would assume. My father was also a very religious man and instilled the values of church. These values I hold true to this day. Unfortunately, my father's passing caused him to miss witnessing his grandchildren get married and his great grandchildren's birth. His presence is missed every day, but especially during these moments.

6.    On September 10, 2001, my family and I had just returned from a weekend getaway to celebrate my father's birthday. On 9/11, I recall my parents heading home to their country home when the attack occurred. They immediately turned their car around and went to assist at my sister's FDNY office in Long Island City, NY. My dad went down to Ground Zero to assist in the recovery efforts.

7.    After 9/11, my dad developed an awful cough later referred to as the "9/11 cough." Thereafter, my dad's cough became progressively worse, and he began to struggle with serious respiratory complications which he eventually succumbed to. In his last years of life, my dad was under much medical care, multiple hospitalizations, and rehabilitation.

8.    Watching my dad struggle and suffer was heart-wrenching. My dad was a man who always remained active, loved going to the gym, and spending time with his friends and family. Due to the decline in my dad's health and difficultly when breathing, he was no longer able to be

the active man I've always known him to be. Instead, my dad's diagnosis of lung disease caused most of his time to be utilized between hospitalization and rehab. I remember holding my dad's hand as he passed away while reassuring him that he did a great job as our dad. I let him know that it was okay for him to join God in heaven and that we would be okay once he was gone. My dad's passing has left a void in my life and that of my family's. He is greatly missed, and his absence presents much sadness at each celebration since his passing. My dad had so much more to live for. Sadly, the job that my dad dedicated his life to ultimately led to his early death. This has left me truly heartbroken.

LOIS ROTHENBERG

Sworn before me this

__2__ day of __August__ 2023

Notary Public

**JOSELYN M ORTIZ**
Notary Public
Harnett Co., North Carolina
My Commission Expires May 23, 2028